UNITED STATES DISTRICT COURT
FOR WASHINGTON D.C.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:25-cr-00172-SLS |
| ) | Judge Sparkle Sooknanan |
| CRISSY MONIQUE BAKER ) | Sentencing: September 30, 2025 |
| Defendant. ) | |

**DEFENDANT'S POSITION ON SENTENCING**

Defendant Crissy Baker has received and reviewed the Presentence Investigation Report prepared by Probation Officer Sarah Asbury Baca. Ms. Baker has no factual disputes with the information contained therein, aside from the typographical errors and minor matters noted to the Court already in DEFENDANT'S SUPPLEMENT TO RESPONSE TO PRESENTENCE REPORT submitted on September 12, 2025. Likewise, she does not have any dispute with the PSR's calculation of the advisory Guidelines range of 8 to 14 months, and that a sentence other than a sentence of imprisonment, in accordance with USSG §5C1.1(b) or (c)(3) is generally appropriate. USSG §5C1.1, commentary note 10) (PSR paragraph 91). Finally, she does not dispute that "if probation is imposed, the term shall be at least one year but not more than five years', and that the Court may impose probation with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention . ." (PSR paragraphs 98, 99). Ms. Baker would respectfully suggest that a sentence of probation or a combination of probation and home confinement is sufficient but not greater than necessary to account for each of the 18 U.S.C.§3553(a) factors.

## FACTUAL BACKGROUND

The Defendant agrees that the PSR and the Statement of Facts signed by the Defendant (previously submitted to and filed in the court record) adequately set forth the offense conduct in this case. Ms. Baker has pled guilty to a one count criminal information charging her with submitting False, Fictitious or Fraudulent Claims to the Government in violation of Title 18, United States Code, Section 287, by causing or inducing her employers Contractor A and Contractor B to submit false claims for the number of hours she worked for Contractor A and Contractor B while she was also working full time for the Department of Housing and Urban Development (HUD).

In short, Ms. Baker began a remote position working from home for HUD as a program analyst in October of 2021 and continued such employment until resigning in July 2025. At various times while employed with HUD, she was approached by recruiters offering her other home-based employment with contractors (including Contractor A and Contractor B) that were performing work on federal contracts. As Ms. Baker was a single mother trying to make ends meet and pay for parochial school tuition for her young daughter, she accepted a remote position with Contractor A, and then another with Contractor B, while still employed with HUD. Due to her exceptional time management, concentration and organizational skills, Ms. Baker was able to coordinate and satisfactorily accomplish all the tasks assigned to her in all three jobs at once through the use of separate simultaneously running laptop computers for each job. This all came to a head in the spring of 2025, as employer-agencies began to terminate Pandemic-era work-from-home arrangements and require actual office presence. When Ms. Baker was approached by

the Government concerning her jobs, she agreed to come in voluntarily and met with AUSAs and government investigators. She provided detailed and exact information on where she had worked, and how she had come to be employed at and accomplished each of her jobs, and answered each and every question put to her fully and truthfully.

It is undisputed that Ms. Baker performed all tasks assigned to her in all three of her jobs, and was never reprimanded or cited for missing work or not completing any assignments tasked to her. In fact, she generally received "outstanding," or at least "fully successful" performance ratings at her jobs. (SEE attachments).

While Ms. Baker now realizes the wrongness of her actions and is ashamed and embarrassed about what she has done, it is undisputed that when this matter came to light, she (through counsel) sought from an early stage to take responsibility for her actions, and to cooperate with and accept a plea from the Government, and has done everything in her power to make up for her actions connected with these events.

## ARGUMENT

I.  **Application of Sentencing Factors Pursuant to 18 U.S.C. Section 3553(a) Support a Sentence of Probation.**

A.  **Legal Standard**

Congress has mandated that federal courts impose the least amount of punishment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. Section 3553(a). In *Kimbrough v. United States,* 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States, 552*

U.S. 38 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. Section 3553(a). In two summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States* 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States,* 129 S. Ct. 840 (2009), 2009 WL 129044 (Jan. 21, 2009). "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson.* 2009 WL 160585, at *1. "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id.* at *2 (emphasis in original). In other words, sentencing courts commit legal error by using a Sentencing Guidelines range as a default to simply be imposed unless a basis exists to impose a sentence outside that range.

**B.     Section 3553(a) Factors**

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in Section 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; see also *United States v. Hughes*, 401 F.3d 540, 543 (4th Cir. 2005). Among the factors the Court must consider are i) the nature and circumstances of the offense; ii) the history and characteristics of the defendant; and iii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with

needed educational or vocational training, medical care, or other treatment in the most effective manner. Ms. Baker would urge the Court to consider that a sentence of a period of probation with community service would be adequate to address all these factors.

### i      Nature and Circumstances of the Offense

Clearly, it cannot be argued that this was not a serious offense. In order for our republic to function and continue, there must be trust that the government is spending our public money wisely and is getting fair services for what it is paying. Both the governing and the governed must know that the system is functioning properly, or it eventually will not. However, there is no credible evidence that Ms. Baker started out with the intent to do anything wrong, or to be paid for accomplishing tasks she did not actually complete. As a single parent facing financial issues, when she was approached by recruiters about other work assignments, she realized she had the bandwidth to perform additional functions. She thought she had found a method of resolving her problems without harming her primary employer-agency's mission or her job performance. As time went on she saw she was completing the tasks assigned to her in both jobs without issue, and neither employer's mission seemed to be hurt. When she was again approached by a recruiter and offered additional employment, she saw that her supervisors were still satisfied with her performance and the work was getting done. In fact, had Contractor A or Contractor B hired a different person instead of Ms. Baker, they would clearly have had to pay that person to accomplish the exact same tasks she was doing and would have billed the Government for those services. There has been no allegation presented that Ms. Baker did not perform all the tasks that were assigned to her or that she was paid for any "no-show" or "no-work" jobs. Each employer

assumedly reviewed its employee's output on a regular basis and was satisfied it was getting adequate performance for what it was paying (SEE attached performance evaluations). Likewise, there is no indication that Ms. Baker's actions were in concert with any other person or that she was engaged in a conspiracy with any other person or persons to defraud the government.

Ms. Baker is an adult and is of course responsible for her own actions. However, her actions were not originally taken with the intention to harm the government or any other person, but instead were taken based on a misplaced but sincerely held belief which she has since discarded that she was actually providing good and valuable consideration for all the dollars she was provided, as long as her assigned tasks were fulfilled. She now realizes she is before the court because she made decisions she should not have made. She is ready to pay the penalty for those decisions.

  ii  **History and Characteristics of the Defendant**

Aside from the conduct for which she has pled guilty herein, Ms. Baker has spent her entire life trying to do the right thing. Although as a child she came from a rough beginning and struggled in school (most probably due to unknown-at-the-time but recently diagnosed 1) autism spectrum disorder, 2) ADHD and 3) Post-Traumatic Stress Disorders), she persevered and eventually succeeded. Although her college career took roughly ten years to accomplish spread over four different institutions (partially due to delays necessitated by her military service and 9/11), she persevered and eventually earned her Bachelor of Arts degree in Human Resources in 2007. Despite the stressors and time constraints of maintaining a single parent household, she

continued her education by taking additional college courses at Northern Virginia Community College and George Mason University from 2020 through 2022 to better herself and advance her career.

Ms. Baker entered the United States Army Reserve in April 1999 and has served her country honorably for well over 20 years.[1] She has earned the rank of Sergeant Fist Class. She served in Operation Enduring Freedom (following the 911 attack) and has received the Army Commendation Medal (ARCOM), which is a mid-level US Army decoration awarded for heroism, meritorious achievement, or meritorious service. She has also served her country through employment at several different work assignments with the Department of Defense - both at various locations in the United States and through a five-year placement in Okinawa, Japan. She is involved in her community, and she plays an active role in her church (SEE attached reference letter from Pastor Shegog). She has a completely clear record and held, until this offense came to light, a top secret US Government Security Clearance.

Notably, Ms. Baker has suffered through anxiety and depression throughout her adult life, and has been treated both through a quarter-year long military service-related behavioral health therapy program in 2024 and in private treatment through a neuropsychological evaluation

---

[1] Although she has been connected with the US Army Reserve for over 20 years, she did not receive reserve credit for several years while she was living and working in Japan, as there was no reserve unit there to which she could be assigned and report to. Therefore, even though her military service extends over roughly 25 years, she is still short about two years of credit for the 20 years of service required to receive military retirement, and will therefore lose the military retirement she has worked her entire adult life toward due to the instant conviction, which has resulted in the loss of her security clearance and the end of her military career.

and continuing therapy with a psychologist. Through this help, she is coming to terms with the issues that led her to make questionable decisions in her life. She is ready to accept responsibility for her poor choices and to move on in her life. Ms. Baker now stands before the Court ready to pay the price for her actions, whatever that price might be. However, counsel would urge the Court to not let the poor choices Ms. Baker has admitted to in this one situation color a life that has been replete with so many years of service to her country and otherwise free of virtually any blemish, and prevent her from moving on.

There is no question that Ms. Baker made terrible choices in connection with these actions, but it should be taken into consideration that she has done all she can do to make up for these poor choices by cooperating completely with the government and assisting its investigation in any way she can.

      **iii.**    **Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

Undersigned counsel would suggest that a probationary sentence with community service would be appropriate in this situation. Ms. Baker's acts were not a crime of violence or one where there was a vulnerable victim. She has already lost much, not only in terms of the disrepute in which she is now held in the community of government contractors in which she spent her career, but in terms of her ability to earn a living. She is currently ineligible to obtain employment in the government contracting community due to the terms of her plea agreement.

However, even after she has completed the terms of any sentence imposed by this Court, it will be virtually impossible for her to ever be able to re-offend in a similar manner. There is little chance she will ever be able to secure employment again in government contracting - the career field in which she is educated and experienced (she likely faces the probability of being debarred from Government employment) - or in any career field at a level anywhere near her previous level. Even if she is not formally debarred from government contracting, the Government contracting community will never accept her again.

She is currently in training for a job with Lowe's Home Improvement Stores, at which her projected salary will not be nearly enough to cover her monthly expenses. She has lost her career and her sense of self-respect due to what she has done. More importantly, she fears she is about to lose the respect of the person most important to her in the world - her 12 year old daughter. She has not yet found a way to explain about the instant case to her, but she knows that conversation must come within the next two weeks.

Based on all of the above, it is entirely unlikely she will ever re-offend in any way for the remainder of her life. As a direct result of her poor decisions, she has lost most of what was important to her in her life. In this unique situation, a probationary sentence is sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes.

## CONCLUSION

Ms. Baker respectfully requests a sentence of probation and community service, for the reasons set out above. In the alternative, if the Court feels additional punishment is required, she

would respectfully suggest a period of probation coupled with a sentence of home confinement for a portion of the probationary period.

        Respectfully submitted,

        Crissy Baker, by counsel,

        /s/
        _____
        Bernard F. Crane (D.C. Bar #386978)
        10521 Judicial Drive, Suite 100
        Fairfax, Virginia 22030
        202 429-2900
        Email: berncr@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2025, I will electronically file the foregoing with the Clerk of court using the CM/ECF system. which will then send a notification of such filing to Will Hart, Esquire, AUSA, and Kondi Kleinman, Esquire, AUSA, United States Attorney's Office, Washington, DC.

        /s/
        _____
        Bernard F. Crane (D.C. Bar #386978)

**ATTACHMENTS:**

(to be provided separately)